UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs                                   Case No: 10-20596
                                        Honorable Victoria A. Roberts

KEVIN REID,

      Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION AND CANCELLING HEARING

### I.     INTRODUCTION

This matter is before the Court on Defendant Kevin Reid's Motion for Fed. R. Crim. P. 17(c) Subpoena. The matter has been fully briefed and is scheduled for hearing on October 28, 2011, at 4:00 p.m. The Court can dispose of this motion without benefit of a hearing and so it is cancelled.

For the reasons set forth below, Defendant's motion is **DENIED**.

### II.     BACKGROUND

On August 6, 2010, U.S. Immigration and Customs Enforcement (ICE) received information from Canadian law enforcement that illegal drugs would be smuggled from Canada to the United States via the Detroit-Windsor Tunnel. On that day, Nicole Kakish arrived at the Detroit-Windsor Tunnel traveling from Canada. U.S. Customs and Border Patrol (CBP) agents searched Ms. Kakish's vehicle and discovered 11 vacuum-sealed bags containing MDMA, or ecstacy, pills. In total, agents recovered 25,205 pills

1

weighing approximately 7.5 kilograms.

On August 11, 2010, ICE agents performed a controlled delivery of the pills. Agents placed a bag containing mostly fake drugs and a small portion of the actual drugs in the trunk of a vehicle parked at the MGM Grand Hotel and Casino in Detroit. Later, ICE agents observed a vehicle driven by Defendant and containing two other males drive up next to the parked vehicle with the drugs. Defendant got out of the vehicle and took the drugs out of the parked vehicle. Defendant and the two other males were arrested when they attempted to leave the area. The other two males in the vehicle have not been charged in this offense.

After his arrest, Defendant told ICE agents that he had been contacted by a woman from Canada in June 2010 to see if he wanted to sell ecstacy pills. Defendant agreed and received a shipment of pills in July 2010. In August 2010, Defendant was contacted by a representative of a drug organization and again agreed to sell ecstacy pills. Defendant agreed to pick up a load of approximately 25,000 ecstacy pills from a vehicle parked at the MGM Grand. He was told to keep approximately 9,000 pills for himself; the other 16,000 pills were for another person. This second delivery resulted in Defendant's arrest.

ICE agents submitted four exhibits containing over 7,000 pills to the Drug Enforcement Administration's (DEA) North Central Laboratory. (Gov'ts Resp. at 2) Every pill tested from these exhibits contained ecstacy (MDMA) and N-Benzylpiperazine (BZP). (*Id.*) The pills in Exhibits 1 and 2, which comprised over half of those tested, also contained 1-(3-trifluoromethylphenyl)-piperazine (TFMMP). (*Id.*)

On October 7, 2010, Defendant was charged in a one-count indictment with

Possession with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1).  On February

17, 2011, Defendant pleaded guilty without a Rule 11 Plea Agreement.

The only issue remaining is how to treat Defendant's pills under the sentencing

guidelines.  If the Court treats Defendant's MDMA and BZP pills as BZP-only pills, the

Court will need to determine the "most closely related controlled substance referenced

in the guidelines."[1]  U.S. Sentencing Guidelines § 2D1.1.  The Presentence

Investigation Report (PSIR) holds Defendant accountable for MDMA pillls.

## III.   ANALYSIS

Defendant asks the Court to issue a subpoena under Fed. R. Crim. P. 17(c)

directing the Government to produce a copy of the "Drug Enforcement Agency's (DEA)

laboratory protocol and manual for the sampling plan and threshold for quantation of

controlled substances." (Def's Mot. at 1) Defendant argues that his expert, a former

DEA agent, needs to review the Manual in order to provide complete testimony at the

sentencing hearing.  Defendant says that the DEA lab reports on the pills do not contain

a quantitative level of MDMA.  Defendant's expert believes that the DEA threshold for

quantitative reporting is 5 percent of the total mixture, but he needs to review the

Manual to confirm this.  If the expert's belief is correct, then Defendant says his pills are

less than 5 percent MDMA.  He argues that this information is critical for sentencing.

---

[1]Courts in the Eastern District of Michigan have found that pills composed of
TFMPP and BZP are most closely related to ecstacy. *United States v. Beckley*, No. 08-
20621 (E.D. Mich. 2009) (Cook, J.); *United States v. Bui*, No. 09-20245 (E.D. Mich
1010).  *Beckley* is currently under expedited review in the Sixth Circuit.  It is the
Government's position that the facts of this case counsel even more strongly that the
pills be treated as ecstacy/MDMA because every single pill actually contains MDMA.
(Gov'ts Surreply at 4, n.2)

Defendant says that he has met the *Nixon* requirements for Rule 17 production, and that due process requires production of the Manual.

The Government makes four arguments in response: (1) that Rule 17 applies only to trials, not sentencing hearings; (2) that Defendant has not met his burden for Rule 17 production of documents under *United States v. Nixon*, 418 U.S. 683 (1974); and (3) that Defendant is improperly attempting to use Rule 17 as a discovery alternative to Rule 16, and the Government has discharged its discovery obligations under Rule 16; and (4) that Due Process does not require production of the Manual.

**A.      Fed. R. Crim. P. 17 Is Not Limited to Pre-Trial Matters**

The Government argues preliminarily that Fed. R. Crim. P. 17 cannot be used to subpoena documents for a sentencing hearing.  The Government says that Rule 17 is "intended to aid in the speedy and efficient administration of a <u>trial</u>." (Gov'ts Resp. at 4) The Government also notes that Rule 17 is found in Part IV, "Arraignment and Preparation for Trial," of the Federal Rules of Criminal Procedure.  (Gov'ts Surreply at 1) Because Defendant pled guilty, the Government argues that Rule 17 is inapplicable. The Court disagrees.

 The relevant portion of the Rule reads: "The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."  Fed. R. Crim. P. 17(c)(1).  Numerous courts have found that Rule 17 subpoenas can be used for post-trial motions and sentencing.  *See U.S. v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981) ("Although Rule 17 subpoenas are generally employed in advance of trial, we see no reason why their use should not be available for post-trial motions and sentencing."); *U.S. v. Boender*, 2010 WL 1912425, *1 (N.D. Ill. 2010)

("Although the structure of the federal rules as well as Rule 17's plain language suggest that the rule was meant to apply only before trial, courts have held that Rule 17 affords parties the ability to subpoena evidence for post-trial matters."); *see also U.S. v. Reaves*, 194 F.3d 1315, 1999 WL 824833 (6th Cir. 1999) (unpublished) (applying Rule 17 in the context of a sentencing hearing); 2 Wright & Miller, *Federal Practice & Procedure* § 272 (4ᵗʰ ed. 2011) (Rule 17 is not limited to subpoenas for the trial.  A Rule 17 subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for a pre-trial motion, and for a post-trial motion.).

The Court finds that a Rule 17 subpoena may properly issue prior to a sentencing hearing.

### B.      Defendant Has Not Met His Burden Under Rule 17(c)

Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas to obtain "any books, papers, documents, data, or other objects the subpoena designates."  The decision whether to issue a subpoena under Rule 17(c) rests within the sound discretion of the trial court.  *United States v. Nixon*, 418 U.S. 683, 702 (1974) In *United States v. Nixon,* the Supreme Court set forth the threshold requirements for seeking production of evidence under Rule 17(c). The party requesting the documents must establish: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  418 U.S. at 699-700.

Rule 17(c) does not provide a broad right to discovery for criminal defendants. There is no general constitutional right to discovery in criminal cases. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The Government's obligation to provide discovery to criminal defendants is explicitly limited to the provisions of Fed. R. Crim. P. 16. These obligations have been increased by *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that due process requires the government to provide the defendant with material exculpatory information in the government's possession), and the Jencks Act, 18 U.S.C. § 3500 (2007) (requiring production of certain kinds of statements of government witnesses) (implemented in Fed. R. Crim. P. 26.2). In formulating the above test, the *Nixon* Court recognized that Rule 17(c) cannot be used to expand the scope of discovery beyond the Government's limited obligations. 418 U.S. at 698-99 ("courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P 16"); *See also Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."). Rule 17 should not be construed to make the limitations in Rule 16 meaningless**.**

Notably, *Nixon* involved a Rule 17 subpoena request by the Government to a non-defendant third party, President Nixon**.** Rule 16 was not applicable in that situation. Rule 16 governs the disclosure obligations of the government and the defendant; it says nothing of the government's or defendant's ability to subpoena documents from third parties. Therefore, where, as here, the defendant seeks materials from the

6

government, the *Nixon* factors must be construed narrowly so as to avoid the use of

Rule 17 as an end-run around the limitations of Rule 16.  The two Supreme Court cases

interpreting Rule 17–*Bowman Dairy* and *Nixon*–make abundantly clear that it is not a

rule of discovery.

Defendant has not met his burden for production under *Nixon;* he cannot show

that the Manual is "evidentiary and relevant."  Defendant argued in his Reply that the

DEA drug analysis reports do not specify the percentage of MDMA present in his pills,

and therefore, the DEA Manual is relevant because it would specify "at what level a

drug must be present to achieve the detection limit."  (Def's Reply at 3).  This argument

is flawed.  The DEA Manual will not tell the Court or Defendant how much MDMA was in

his pills.  As the Government points out in its Surreply, Defendant already has the

information that he seeks.  The DEA lab results and Forensic Chemist Worksheets,

attached as Exhibit A to the Government's Surreply, specify the amount of MDMA in

each of the exhibits submitted for testing.[2]  Because the Government supplied

Defendant with the information he wanted the Manual for, the Manual is not relevant.

The Court and Defendant have all of the information needed for sentencing.

Because Defendant does not meet the requirements of the first *Nixon* factor, the

Court need not address the other three.

**C.      Defendants Is Not Entitled to the DEA Manual Under Rule 16**

---

[2]Exhibit 1 contained 4.6960% MDMA; Exhibit 2 contained 4.7826% MDMA; Exhibit 3 contained 4.6656% MDMA; Exhibit 4 contained 4.6656% MDMA.  (Gov't's Ex. A at 59, 62, 65, 67).

As explained above, Defendant cannot obtain a copy of the DEA Manual through a Rule 17 subpoena.  The Court addresses whether Defendant was entitled to the Manual under Rule 16.

Federal Rule of Criminal Procedure 16(a) details the government's disclosure obligations to defendants.  Rule 16(a)(1)(F) states that "the government must permit a defendant to inspect and to copy or photograph the results or reports . . . of any scientific test or experiment . . . ."  Here, Defendant does not claim that the Government failed to disclose the results of the tests performed on the confiscated pills.  Rather, Defendant argues that he is entitled to the Manual that details the DEA's procedures for conducting such tests.  Since the Manual is not a result or report of a scientific experiment, it is beyond the scope of Rule 16 and not subject to discovery.

In addition, Rule 16(a)(1)(E) requires the government to allow defendants to copy or inspect all documents and objects "material to preparing the defense."  Here, Defendant never alleged that the DEA's testing operation was deficient, and never challenged the results of the DEA's tests.  He does not deny that every pill tested by the DEA contained some percentage of MDMA, or ecstacy.  He pleaded guilty to possession with intent to distribute what he believed to be ecstacy.  Defendant now argues it is "critical for sentencing" that he obtain the DEA Manual so that he can determine what percentage of each pill's composition was MDMA.

Defendant already has in his possession lab reports detailing the exact percentage of MDMA in his pills.  *See* footnote 2, *supra.*  The DEA Manual will not provide any additional information "material to preparing the defense."

Guidelines § 2D1.1(c), Note (A), explains how mixtures of controlled substances

8

are treated at sentencing:

> Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance.  If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

All of Defendant's pills contained MDMA.  Although the pills also contained BZP, a distinct controlled substance, MDMA results in a greater offense level.  Therefore, under the Guidelines, the weight of the entire mixture is assigned to MDMA.

### D.      Due Process Does Not Require Production of the Manual

The Sixth Circuit has found a due process violation when a sentencing judge relies on erroneous information at sentencing.  *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005).  Defendant does not allege that the lab results contain erroneous information or were compromised.  Instead, Defendant alleges that the DEA Manual would tell him how much MDMA was in his pills.  The DEA Lab Reports and Worksheets, already produced, tell Defendant how much MDMA was in his pills.  The DEA Manual adds nothing.  Due Process does not requires its production.

### IV.    CONCLUSION

For these reasons, Defendant's motion is **DENIED**.

The hearing scheduled for Friday, October 28, 2011 is **CANCELLED**.

**IT IS ORDERED**.


                                        /s/ Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge


Dated:  October 26, 2011

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 26, 2011.<br><br>s/Linda Vertriest<br>Deputy Clerk |